Thank you, your honor. May it please the court. My name is Phil Dormier. I'm a CJA appointed counsel for the appellant in this case, Mr. Timothy Ossana. The issues on appeal concern the imposition of a procedurally flawed and substantially unreasonable sentence. The government in this brief has conceded that the district court made a Rule 32 error by checking the wrong box in the statement of reasons, which contradicts what the sentencing transcript in the sentencing hearing concluded. However, the parties do differentiate on what the appropriate remedy to this error is. Mr. Ossana requests this court to vacate his sentence entirely and to remand the case for resentencing for the following reasons. Well, haven't our precedents stated that it's fine just to have the PSR supplemented and sent to the BOP? Your honor, that is correct. On most instances, we'd find that the court would essentially correct the record, and I believe that the government has suggested just attaching a to the judgment. However, in this case, it's different because the Rule 32 errors essentially have affected Mr. Ossana's substantial rights, his fundamental rights, his ability to serve his sentence. And in fact, we would argue that it taints the record, his service of sentence, and the reasonableness of the sentence, specifically his ability to earn credits under the First Step Act. Counsel, what if it had been done correctly the first time? The remedy that I think the government is proposing, that you attach the transcript with the judgment and the correct box is checked, wouldn't the result be the same for your client back then? In other words, where's the difference in the substantial rights being affected? Well, I would argue that we can't turn back the hands of time to correct the record, and damage has already been done in terms of Mr. Ossana's ability to serve his sentence as intended by the court. And also, as argued in the briefing, Mr. Ossana's sentencing calculus, his approach to making objections in his case, contemplated, there was no foreseeability that this error would ever occur. And one of the things that we argue in the briefing is the paragraph 23, which is the four-point enhancement under the 2K chapter. Essentially, what Mr. Ossana is saying is that if he would have known or had any foreseeability that he would have ended up in this situation, he would have waged his objections differently at the time of sentencing or before sentencing. So is that the substantial right? Because even if you go back and you're asking for full resentencing, and the corrections are made under the alleged error, as you said, you can't go back in time and undo, but presumably the BOP would, from this point forward, respond appropriately to the information before it. Is that fair? Your Honor, I would suggest that if we were to correct the record and send it to BOP, that they would acknowledge it and they would act upon it, but that doesn't resolve the remaining objections for Mr. Ossana's case that also promote remand, which would include his objection to paragraph 52 regarding the Arizona conviction. But why would remand be necessary on a number of those objections where the district court indicated that it wasn't relying on those matters? Thank you, Your Honor. I think the most important aspect of that is, inadvertently, when the violated Mr. Ossana's due process rights to address those objections in court, in open court, and have a hearing on those objections. And so when the court said it was not going to consider those paragraphs in its sentencing calculus, but then the effect of the statement of reasons essentially creates that due process error. And so Mr. Ossana would want to be heard on all of his objections, including the objection Overall, what would be the benefit of a complete resentencing when, if all of the objections made were accepted, the sentence sought was 46 months, the district court sentenced to What's going to be the benefit of complete resentencing? And how much time remains on the sentence to be served? The remainder of the sentence is expected out date is March of 2023. I believe it's the 13th. So we're just about six months out. We are, Your Honor. I'm glad you bring that up. One of the other reasons for a remand in this case is that Mr. Ossana would request the court to consider, and also the district court to consider, a conditional release, to release him to a halfway house in St. Louis or San Diego pending the outcome of the appeal because of the 160 days that he calculates that he's lost under the First Step Act due to the Rule 32 error, and so that would Was that briefed? It is not briefed, Your Honor. This is something that has come to my attention from Mr. Ossana this week. It had not been briefed in the briefs. However, we do intend to pursue that and would ask the court to consider that as part of the reason to remand the case. I think it's unlikely we could consider it as part of this appeal being raised at oral argument. Well, even if this court is not inclined to act upon that request, and I certainly understand that, Your Honor, it was not briefed, what we would say is that we're going to pursue that in the district court, and a remand would allow the court to make the sentence accurately reflected in the statement of reasons and would also be able to address the consequence of the Rule 32 error. Also the court would be able to hear Mr. Ossana on his Rule 56, or his Paragraph 56 argument regarding Paragraph 52 on the Arizona conviction, which Mr. Ossana would clearly, he argues in his brief, and on his behalf, I would say that it's clear in the record that the Arizona court in the conviction, it should not have warranted prison time and therefore should not count for points. I show that I am into my rebuttal time. If there are no other questions, I'll reserve that time. Thank you, Mr. Doorman. Thank you, Your Honor. Mr. Kester? Yes. Good morning, Your Honors. My name is Jack Kester from the U.S. Attorney's Office from the Eastern District of Missouri. As you can see from the record, Mr. Ossana objected to, I believe it was 25 separate paragraphs in the pre-sentence report, but only one of those objections even had the potential to impact his guideline range. As Mr. Doorman just said, that was the objection to Paragraph 52, and I'm prepared to address why the three points were properly assessed for that particular conviction, but first I did want to address the Rule 32 issue in this case. The district court, throughout the sentencing hearing, made it absolutely clear time and time again that all of the disputed portions of the PSR, all of Mr. Ossana's complaints about the information in the PSR that had no impact on the guideline range, none of that was going to impact the overall sentence. The court was not going to be taking that into consideration. I believe that Yes, wasn't there a big difference between concluding that a determination on an objection is unnecessary on the one hand, and simply adopting the PSR as written, and the effect that that has at the BOP? Yes, and that's what needs to be remedied because the wrong box was checked, and we acknowledge that. It's my understanding that you're proposing that the remedy for that is simply to attach a transcript. That was one of the remedies that I found Wouldn't that require the Bureau of Prisons to sort through pages and pages of transcripts to determine what the rulings are? Wouldn't it be better to have an amended statement of reasons? That's also an appropriate remedy as well, but some of the cases that I found and cited in the briefs, they adopted, since we already have the sentencing transcript, and it's clear on the record that that was not impacting the sentence, I thought that would be an easy way to resolve it, but you're correct too. Another alternative would be to issue an amended statement of reasons, but what I So that would just require a remand, but not a resentencing? A limited remand, and, Your Honors, for what it's worth, after I reviewed Mr. Osana's brief and realized that the wrong box was checked, we reached out to Mr. Dormeyer and proposed a limited remand to correct that error because if the concern truly was that it was a limited time, we wanted to get that remedied sooner rather than later, and we were informed that Mr. Osana was going to adamantly oppose that because he wants a full remand for resentencing. As I understand the concern, though, it may have been even too late then for the remedy that I understand Mr. Osana wants, which is when he got to the Bureau of Prisons when all of those materials landed there, the information the BOP had included all of the pre-sentence report information, and so to the extent that the programs he could participate in, the level of security that he would be placed in, were probably already maybe set in stone. I think the Bureau of Prisons probably moves pretty slowly on some information. So how do you address the idea that your remedy of just checking the right box now really doesn't get at the harm that Mr. Osana says he suffered as a result of this error? I don't know that there's anything else we could do at this point. Had the error been noticed early, I suppose counsel could have filed something directly with the district court to correct that. But at this point, and it's also worth noting too, I'm not sure for certain what programs, if any, Mr. Osana has been unable to participate in because of this information in the PSR. This information is all coming from Mr. Osana, but I'm not aware of him being turned down for any programs because of some of the information in the PSR that was included. Do you agree that that's a possibility? Even if we don't have the records, would you agree that's probably a possibility given some of the information in the pre-sentence report that he would be turned down from some opportunities? It is possible, Your Honor, and the answer to that is we simply don't know. We simply do not know. So the question now is what do we do to remedy the situation? And as I said, that was an appropriate remedy that I found was to simply attach the sentencing hearing transcript where the judge made clear that none of that disputed information was going to impact his sentence. With respect to his objection, the one objection that actually did impact the guideline range, that was an objection to paragraph 52, and that concerned a 2004 conviction from Arizona. Mr. Osana was convicted of possession of cocaine base, and he was sentenced to serve two years and five months in Arizona prison, and therefore it qualified for three criminal history points. Now, Mr. Osana's contention is simply that he received an illegal, unlawful sentence by the court in Arizona back in 2004. But it's important to note what was not in dispute about that particular conviction. Number one, there was no dispute that he was actually convicted of it. There was no dispute that he received a sentence of two years and five months. There was also no dispute that he actually served all that sentence. He served two years and five months. His sentence expired, actually, in August of 2006 while he was in custody on other charges. And there was no dispute that the period of incarceration extended into the so-called 15-year look-back period under the guidelines. His sole contention was that the Arizona court imposed an unlawful sentence, and the district court correctly concluded that that amounts to, you just simply cannot collaterally attack a state conviction in that manner. The guidelines provide that such an attack is not available, and this quote is recognized on many occasions, with the exception of a very, very narrow circumstance. When there's an allegation that someone's right to counsel was violated, you simply cannot collaterally attack a conviction in that manner. But I would point out, too, though, even if such a collateral attack was permitted, it would fail. And, you know, the reason I suppose we don't allow collateral attacks is because it requires the parties to do a deep dive into another state's statutory scheme. But there are at least two reasons that a collateral attack on Mr. Osana's conviction in paragraph 52 would fail. You've got to go back to 1996. There was an enactment called Proposition 200 that the citizens of Arizona enacted, and this significantly changed the drug penalties in the state of Arizona. And it basically said for a first offense, possession of a controlled substance, you were ineligible for prison. You could not be sentenced to a prison term. You were to receive mandatory probation. But as many statutes have, there were a number of exceptions to that. And at least two exceptions would have applied to Mr. Osana, even if he tried to collaterally attack his conviction. Most notably, there was a violent crime exception. And the express provision in the statute stated that any person who has been convicted of or indicted for a violent crime is not eligible for probation. This is the statutory scheme, Arizona Revised Statute Section 13-90101. And violent crime is defined very broadly under this statute. And it includes, among other things, any criminal use of a deadly weapon or dangerous instrument. Now back in 1999, Mr. Osana was convicted of aggravated assault with a deadly weapon or dangerous instrument. That conviction is outlined in paragraph 48 of the pre-sentence report. He was sentenced to serve five years. That's the conviction that was actually the subject of three different opinions from this court that are cited in my brief. But there's no question that that conviction involved the use of a deadly weapon or dangerous instrument, as this court has recognized. So Mr. Osana could not successfully collaterally attack this sentence, even if he tried. So the sentence that was, we have a properly calculated guideline range, 41 to 51 months. Mr. Osana asked for a 46 month sentence. The district court gave him 45. It's right in the middle of his properly calculated guideline range. And it was actually lower than Osana himself requested. And so it certainly could not be said to be substantively unreasonable. Counselor, you've exhausted your time, but I did want to ask one question. If the government had any response to the motion to supplement the record on appeal. The two motions to supplement the record. Yes, I had an opportunity. I do not oppose that because the way I understand it, the latest one, he's simply attaching records to show that two misdemeanor drug paraphernalia convictions have been expunged in Arizona. Those did not count for criminal history points. And the other motion to supplement the record, that is not going to change anything here. Nothing related to the conviction in paragraph 52. Thank you. Thank you. Mr. Drumer, your rebuttal. Thank you, Your Honor. I'd like to make one distinction. And it was made clear in the government's brief and I think here today. There is a difference between the impact of these objections and the findings on these objections and the rulings on these objections. There's an impact on the sentence itself and how to serve that sentence versus just an impact on the guideline range. And I think the government's focusing on Mr. Rossana has opposed and argued that paragraph 52 and several others should be heard in the district court and ruled upon in this court. 52 does have an impact on his objections and the rulings on those objections. It impacts the service of the sentence. And it's clear that the rule was established as a rule to prevent the Bureau of Prisons from relying on information that is inaccurate, untrue, etc. Has anything been put in the record to indicate there has been some detriment to Mr. Rossana? Your Honor, what I would refer to, there's not anything briefed in this case, but what I would refer the court to is the First Step Act. Essentially, it grades the defendant based on their recidivist risk assessment and it gives them earn time credits based on that assessment. And in this case, Mr. Rossana has been assessed at a higher level than what he should and it has impacted him. Has he petitioned for relief under the First Step Act? Your Honor, he has asked for compassionate relief, but he has not filed a motion to that extent, which is what I'm prepared to do following this appeal in the district court. I would also like to address the issue of collateral attack. I do understand the law has limited aspects of an exception for uncounseled misdemeanor convictions that carry a jail term. However, Rossana would assert that being sentenced to prison instead of mandatory probation in violation of Arizona law is equivalent in constitutional magnitude to the uncounseled misdemeanor conviction when prison time is imposed and further argues that the sentencing guidelines, it's clear from the record, the sentencing guidelines that this should not Your Honor, in closing, I see I've exhausted my time. I would just ask the court to vacate the sentence, remand for resentencing consistent with the briefing and the arguments in this case. Thank you, Mr. Dormeyer. Thank you. Thank you also, Mr. Kestert. The court appreciates both counsel's participation in the argument this morning. And Mr. Dormeyer, we know that you've represented Mr. Rossana under the Criminal Justice Act and we thank you for participating in that program.